IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 5, 2010

## STATE OF TENNESSEE v. RANDY PARHAM

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-07474      John P. Colton, Jr., Judge**

**No. W2009-02576-CCA-R3-CD  - Filed December 10, 2010**

The defendant, Randy Parham, was convicted by a Shelby County Criminal Court jury of attempted first degree premeditated murder, a Class A felony; aggravated robbery, a Class B felony; theft of property valued at $1000 or more, a Class D felony; and domestic assault causing bodily injury, a Class A misdemeanor. He was sentenced by the trial court as a Range II offender to thirty-five years at 100% for the attempted first degree murder conviction, fifteen years at 100% for the aggravated robbery conviction, six years at 35% for the theft conviction, and eleven months, twenty-nine days for the misdemeanor assault conviction. Finding the defendant to be a dangerous offender, the trial court ordered that the sentences for his felony convictions be served consecutively to each other, for a total effective sentence of fifty-six years in the Department of Correction. The defendant raises essentially three issues on appeal: (1) whether the evidence was sufficient to sustain his felony convictions; (2) whether the trial court erred by not merging the aggravated robbery conviction with the theft conviction and the attempted murder conviction with the assault conviction; and (3) whether the trial court erred in sentencing. Based on our review, we conclude that the evidence was sufficient to sustain the convictions but that the defendant's domestic assault conviction should have been merged into the conviction for attempted first degree murder. We further conclude that the trial court did not make adequate findings in support of the sentences imposed. We, therefore, merge the domestic assault conviction into the conviction for attempted first degree murder and remand for resentencing and for the entry of corrected judgments to reflect the merger and the fact that the defendant was convicted in count four of theft of $1000 or more, rather than theft of $10,000 or more as erroneously marked on the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part, Reversed in Part, and Remanded**

ALAN E. GLENN, J., delivered the opinion of the Court, in which J.C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

Robert Wilson Jones, District Public Defender; Tony N. Brayton (on appeal) and James Hale (at trial), Assistant Public Defenders, for the appellant, Randy Parham.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William L. Gibbons, District Attorney General; and David Zak and Marlinee Iverson, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

This case arises out of the defendant's April 10, 2008, violent beating of his ex-girlfriend, Joyce Marable, and theft of her money, jewelry, and vehicle. At the defendant's trial, the victim testified that she and the defendant had been in a relationship for over a year and had lived together for approximately six months but that they had broken up and the defendant had moved out of her Memphis home by the time of the April 10, 2008 incident. She said that the defendant called her that morning to ask if he could stop by to retrieve his belongings and she agreed. The defendant arrived at about 4:00 that afternoon, and she went downstairs and admitted him into the house. He asked for a glass of water, and she told him that he knew where the kitchen was. The victim stated that she had gone back upstairs to gather the defendant's belongings when she heard the defendant running up the steps, turned around, and found him standing behind her with his hands behind his back.

The victim testified that the defendant told her that she had been "playing with him too much" and that he had come to kill her. She asked him to leave, and he repeated that he had come to kill her, adding that he was "for real." The defendant then brought from behind his back a fireplace log and began beating the victim in the head with it. The victim said that blood was running down her head as she backed away from the defendant and begged him to stop. The defendant, however, continued to beat her about the head. She then turned to run but slipped and fell onto the floor in her bedroom. As she lay on the floor with her arms covering her head and pleading for him to stop, the defendant continued to beat her, saying, "Bitch, you need to not ask me please stop, you need to ask God to let you go to heaven, not hell . . . [b]ecause you going to join your dead ass mom there."

After beating her for a while, the defendant asked the victim where her purse and jewelry were located. She told him that her purse was hanging on the door and her jewelry was in her jewelry cleaner, and the defendant then dumped the contents of her purse and jewelry cleaner onto her bed and took her cash and jewelry before returning to her and resuming the beating. The victim stated that the beating continued for approximately one more minute until she closed her eyes and lay still as if she were "drifting off." At that point,

the defendant stopped, ran down the stairs, and departed in her truck. When he was gone, she struggled to her feet, slid down the steps to the entrance hall, and made her way outside, where she was able to attract the attention of her neighbors before she lapsed into unconsciousness.

The victim testified that a nurse who treated her at the hospital told her that she was lucky to be alive because she had lost so much blood. She said she had bruises all over her body, two broken arms, a broken wrist, three broken fingers, and a gash to the back of the head that required more than twenty stitches. She stated that she went to physical therapy after her casts were removed but nonetheless suffered permanent damage in the form of a loss of strength to her right hand and the inability to completely straighten her right arm.

The victim was unable to say exactly how long the beating lasted or how many times the defendant hit her. She testified, however, that the defendant hit her so many times and so violently that a piece of the log broke off and "was sticking in [her] head." According to her testimony, the defendant had retrieved the log from the fireplace in her downstairs den. She said that her truck, which was worth over $1000, was recovered on April 12, 2008, when the police arrested the defendant in the vehicle in an area of Memphis "off of Bellevue and McLemore."

On cross-examination, the victim denied that she and the defendant argued before the assault occurred. She repeated that the defendant arrived at her home at 4:00 p.m. and estimated that the entire episode lasted approximately seven minutes. She acknowledged, however, that she might have told a police officer that the assault occurred at 5:30 p.m.

Memphis Police Officer Francis Johnson responded to the scene to find the victim, who was "bleeding profusely," sitting outside her house rocking back and forth and moaning while a neighbor held a towel to the back of her head. Blood was "st[r]eaming down" the back of the victim's neck, and the victim informed the officer that her boyfriend had hit her numerous times in the back of the head with a fireplace log. The victim also reported that the defendant said during the beating that she was going to meet her mother, which frightened her. When Officer Johnson asked why that statement had frightened her, the victim explained that her mother was already dead. Officer Johnson testified that the victim told him that the defendant had taken $150 in cash and the keys to her Oldsmobile Bravada from her purse and had driven off in her vehicle. On cross-examination, Officer Johnson acknowledged that the victim told him that she and the defendant had been arguing before the attack.

Sergeant Morley Wright of the Memphis Police Department's Crime Scene Investigation Unit identified the fireplace log with blood spatter on it, which was admitted

as an exhibit and published to the jury.

Cornette Irby, an employee of a Cash America Pawn store located on Park Avenue, testified that on April 11, 2008, an individual using the defendant's identification pawned a ladies' fashion ring for $120. She was unable to locate the pawn ticket but was able to retrieve the transaction information from the store's computer system. Mark Burnett, an employee of another Memphis Cash America Pawn store located on South Third Street, testified that on that same date, an individual using the defendant's identification pawned a ladies' fashion ring for $150 at the South Third store. Burnett identified the pawn ticket from that transaction, which included a fingerprint of the individual who had pawned the item.

Sergeant Michael Freeman of the Memphis Police Department's Burglary Bureau, who was assigned to pawnshop detail, testified that he discovered that the defendant had pawned two rings at two different locations and went to the stores and picked up the rings, which he then tagged into evidence.

Sergeant Anthony Davis of the Memphis Police Department's Domestic Violence Unit testified that the victim identified the rings retrieved from the pawnshops as her stolen jewelry.

Linda Seldon, a fingerprint examiner with the Shelby County Sheriff's Department, testified that she compared the fingerprint on the pawn ticket to a set of the defendant's fingerprints but, due to the print's poor quality, was unable to either exclude or include the defendant as the source of the print.

The defendant elected not to testify and rested his case without presenting any proof.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant challenges the sufficiency of the evidence in support of his convictions for attempted first degree murder, aggravated robbery, and theft over $1000. When the sufficiency of the convicting evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State

-4-

v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

## A. Attempted First Degree Premeditated Murder

The defendant was found guilty of criminal attempt to commit the first degree premeditated murder of the victim. First degree murder is defined as "[a] premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1) (2010). "Premeditation" is

> an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

Id. § 39-13-202(d). For the purposes of this case, a person "commits criminal attempt who, acting with the kind of culpability otherwise required for the offense: [i]ntentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the offense were as the person believes them to be; "[a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part." Id. § 39-12-101(a)(1)-(2).

The defendant argues that there was no reliable direct evidence, and insufficient circumstantial evidence, to establish that he was acting with premeditation at the time that he beat the victim. He acknowledges the victim's testimony about his stated intent to kill her, but he contends that the statements were made during an argument while he was "in the heat of passion, without the design or reflection necessary to establish premeditation." He further argues that the circumstances surrounding the assault were insufficient to establish premeditation, as the proof failed to show any history of hostility between him and the victim, that he made any preparations to conceal the offense before the crime, that he had formed any previous desire or intent to kill the victim, that he brought the weapon with him to the victim's home, or that the attack, when viewed in the context of other cases, was particularly heinous or cruel. The State disagrees, arguing that there was sufficient evidence to support the jury's finding of premeditation.

We agree that the evidence was sufficient to establish premeditation. The "element of premeditation is a question of fact" for the jury to determine based upon a consideration of all the evidence. State v. Suttles, 30 S.W.3d 252, 261 (Tenn. 2000) (citing State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997)). A jury may infer premeditation from circumstantial evidence surrounding the crime, including the manner and circumstances of the killing. See State v. Pike, 978 S.W.2d 904, 914 (Tenn. 1998); State v. Addison, 973 S.W.2d 260, 265 (Tenn. Crim. App. 1997). There are several factors which our courts have concluded may evidence premeditation: "the use of a deadly weapon upon an unarmed victim; the particular cruelty of the killing; declarations by the defendant of an intent to kill; evidence of procurement of a weapon; preparations before the killing for concealment of the crime, and calmness immediately after the killing." Bland, 958 S.W.2d at 660.

Viewed in the light most favorable to the State, the evidence showed that the defendant, who was obviously angered by the breakup of his romantic relationship with the victim, retrieved a fireplace log from her downstairs den, followed the victim upstairs, and, with the log hidden behind his back, accused the victim of toying with his affections and announced that he had come to kill her. When the victim asked the defendant to leave, the defendant repeated his intention to kill her and assured her that he was serious. The defendant then began beating the unarmed victim in the head with the log, in the process causing a gash in the victim's head that required more than twenty stitches to close. The

defendant continued the violent beating even after the victim had fallen on her back onto the floor, striking the cowering victim so forcefully with the log that he broke both of her arms and one of her wrists and left a piece of wood embedded in her head. During this time, the defendant also told the victim that she was about to join her mother in death and that she should pray to go to heaven rather than hell. The defendant paused the attack long enough to dump the contents of the victim's purse and jewelry onto her bed and to take her cash, jewelry, and truck keys, but he then resumed the beating without stopping until the victim had closed her eyes and ceased struggling. From all this evidence, a rational jury could have reasonably found that the beating occurred after the defendant's exercise of reflection and judgment, with the defendant's purpose being to kill the victim. We conclude, therefore, that the evidence was sufficient to sustain the defendant's attempted first degree murder conviction.

## B. Aggravated Robbery and Theft of Property

The defendant was convicted of aggravated robbery for his taking of the victim's cash and jewelry by the use of a deadly weapon, see Tenn. Code Ann. §§ 39-13-401(a), -402(a)(1) (defining aggravated robbery as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" that is "[a]ccomplished with a deadly weapon"), and of theft of $1000 or more for his taking of the victim's vehicle. See id. § 39-14-103 ("A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent."). The defendant concedes that the State presented some evidence in support of the convictions but argues that the proof was insufficient for a rational jury to find him guilty of the offenses beyond a reasonable doubt. We respectfully disagree. The jury heard detailed testimony from the victim, which, when viewed in the light most favorable to the State, established that the defendant took the victim's cash and rings during the midst of his violent attack, took the victim's vehicle as he fled the house following the attack, and was arrested in the victim's vehicle two days later. The jury was presented with additional proof, which, when again viewed in the light most favorable to the State, established that the defendant pawned the victim's stolen jewelry on the day following the attack. This evidence was more than sufficient for a rational jury to find the defendant guilty of the offenses beyond a reasonable doubt. We conclude, therefore, that the evidence was sufficient to sustain the defendant's convictions for aggravated robbery and theft of property valued at $1000 or more.

## II. Merger of Offenses

The defendant next contends that the trial court erred by not merging the domestic assault conviction into the attempted first degree murder conviction and the theft conviction

into the aggravated robbery conviction. The defendant concedes that he failed to raise the issue in his motion for new trial, but nonetheless argues that he should be afforded relief under the doctrine of plain error. The State disagrees, arguing that this court should not exercise plain error review because in each instance the defendant committed separate, distinct acts that do not violate double jeopardy principles.

The doctrine of plain error provides that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). In order for us to find plain error,

> "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The presence of all five factors must be established by the record before we will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one factor cannot be established. Id. at 283.

The defendant cannot show that the trial court committed plain error by not merging the theft and aggravated robbery convictions, as no clear and unequivocal rule of law was breached, no substantial right of the defendant's was affected, and consideration of the alleged error is not necessary to do substantial justice. In State v. Denton, 938 S.W.2d 373 (Tenn. 1996), our supreme court set out the framework for determining whether a defendant has received multiple punishments for the same offense. The resolution of a double jeopardy issue requires: (1) a Blockburger v. United States, 284 U.S. 299 (1932), analysis of the statutory offenses to determine whether each requires proof of an additional fact that the other does not; (2) an analysis of the evidence used to prove the offenses; (3) a consideration of whether there were multiple victims or discrete acts; and (4) a comparison of the purposes of the two statutes. Denton, 938 S.W.2d at 381. "None of these steps is determinative; rather the results of each must be weighed and considered in relation to each other." Id.

As previously discussed, the defendant was convicted of aggravated robbery for his intentional or knowing theft of the victim's cash and jewelry by violence that was accomplished by the use of a deadly weapon. His theft conviction, by contrast, was based on his having knowingly obtained or exercised control over the victim's vehicle without her

consent and with the intent to deprive her of the vehicle. Each conviction involved different statutory elements, and different evidence was presented in support of each. Moreover, the separate convictions involved discrete acts on the part of the defendant. In this respect, we reject the defendant's argument that he accomplished the theft of the vehicle at the time he removed its keys from the victim's purse, and instead agree with the State that the theft did not occur until the defendant knowingly obtained or exercised control over the vehicle itself. Thus, although the statutes have overlapping purposes, see State v. Harold Holloway, Jr., No. E2004-00882-CCA-R3-CD, 2005 WL 1981791, at *7 (Tenn. Crim. App. Aug. 16, 2005), perm. to appeal denied (Tenn. Feb. 26, 2007), the results of the other three steps of the Denton analysis lead us to conclude that the defendant's convictions for aggravated robbery and theft do not violate double jeopardy principles.

Our analysis leads us to a different conclusion with respect to the defendant's convictions for attempted murder and domestic assault. We agree with the State that the defendant's conviction for domestic assault, which was based on the defendant's having committed an assault causing bodily injury to a member of his family or household, see Tenn. Code Ann. §§ 39-13-101(a), -111(a)-(b), contains clearly different statutory elements from those of attempted first degree premeditated murder. We respectfully disagree, however, with the State's contention that the evidence used to prove each conviction was "wholly separate and distinct," that the convictions involved discrete acts by the defendant, and that the purposes of the two statutes are separate. In support of its position, the State relies on the fact that the defendant interrupted his attack on the victim to take her cash and jewelry, asserting that "[t]he defendant committed a wholly separate and distinct offense of domestic assault when he beat [the victim] after he accomplished and completed the aggravated robbery." We see no such distinction in the different "episodes" of beating, both of which were perpetrated with the same weapon, in the same location, and against the same victim during a very short period of time. We also believe that the purposes behind the two statutes are overlapping, as both criminalize behavior involving physical violence and harm to an individual. We, therefore, find plain error in the defendant's separate convictions for attempted murder and domestic assault and, accordingly, merge the domestic assault conviction into the conviction for attempted first degree premeditated murder.

### III. Sentencing

Lastly, the defendant contends that the trial court imposed an excessive sentence by failing to follow the sentencing guidelines. Specifically, he complains about the trial court's failure to address whether there were any enhancement or mitigating factors in setting the length of the sentences and its failure to make adequate findings of fact in support of its order of consecutive sentencing. The State concedes that the trial court failed to make adequate sentencing findings and agrees that the case should be remanded for the trial court

to readdress the issue of consecutive sentencing. The State argues, however, that the defendant has failed to show that the length of any of the sentences, all of which fell within the applicable range for a Range II offender, is inconsistent with the purposes and principles of the Sentencing Act.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses, (h) any statements made by the accused in his own behalf, and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2006), Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

In imposing a specific sentence within a range, a trial court "shall consider, but is not bound by" certain advisory sentencing guidelines, including that the "minimum sentence within the range of punishment is the sentence that should be imposed," and that "[t]he sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors[.]" Tenn. Code Ann. § 40-35-210(c)(1), (2). The weighing of the various mitigating and enhancement factors is "left to the trial court's sound discretion." State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008).

Tennessee Code Annotated section 40-35-115(b) provides that it is within the trial court's discretion to impose consecutive sentencing if it finds by a preponderance of the evidence that any one of a number of criteria applies, including that "[t]he defendant is a

dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4) (2006). When a trial court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it is required to make further findings that the aggregate length of the defendant's sentence reasonably relates to the severity of his offenses and is necessary to protect the public from further criminal conduct of the defendant. State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999); State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995). The trial court must "specify the reasons" behind its imposition of a consecutive sentence. See Tenn. R. Crim. P. 32(c)(1).

In sentencing the defendant, the trial court stated that it had "reviewed the notes in this matter" and the prior record of the defendant, which included a conviction for second degree murder. The trial court then noted that the defendant was a Range II offender "due to his prior history" and set the length of his sentences. Immediately afterwards, the court found that the defendant was a dangerous offender "due to . . . the prior record," and ordered that the sentences be served consecutively. The court made no further findings in support of the sentences.

We agree with the defendant that the trial court made inadequate findings in support of its sentencing determinations. Accordingly, we remand for resentencing with the trial court instructed to state clearly for the record its factual findings in support of both the sentence lengths and the order of consecutive sentencing.

## CONCLUSION

Based on the foregoing authorities and reasoning, we merge the domestic assault conviction into the conviction for attempted first degree murder and remand for a new sentencing hearing and for correction of the judgment form to reflect the correct grade of the defendant's theft conviction. In all other respects, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE